IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **DUSTIN RIGGIO, individually, and in his representative capacity as Administrator of the Estate of Kim Mills, deceased, and on behalf of all wrongful death beneficiaries of Kim Mills, deceased** | **PLAINTIFF** |
| v. | CAUSE NO. 1:18CV218-LG-RHW |
| **ISREAL PRUNEDA; SMC TRANSPORT LLC; WERNER ENTERPRISES, INC.; and JOHN DOES 1-5** | **DEFENDANTS** |

## ORDER REGARDING SUMMARY JUDGMENT MOTIONS

BEFORE THE COURT are four fully briefed summary judgment motions in this vehicle accident wrongful death case: the [165] Motion for Summary Judgment filed by Defendant Werner Enterprises, Inc.; the [177] Motion for Partial Summary Judgment filed by Defendants Israel Pruneda and SMC Transport, LLC; the [179] Motion for Partial Summary Judgment on punitive damages filed by Israel Pruneda and SMC Transport, LLC; and the [184] Motion for Summary Judgment filed by Plaintiff Dustin Riggio. Because these motions involve common issues of law and fact, they are resolved together. After due consideration, the Court concludes that Werner's Motion should be granted and Riggio's claims against Werner dismissed; Pruneda and SMC's Motion for Partial Summary Judgment should be granted; Pruneda and SMC's Motion regarding punitive damages should be granted; and

Riggio's Motion for Summary Judgment should be granted in part and denied in part.

BACKGROUND

Kim Wells tragically died from injuries she received when the Toyota Prius she was driving rear-ended a tractor-trailer being driven by Israel Pruneda on I-59 in Pearl River County, Mississippi. The accident occurred at 5 p.m. on October 3, 2017, a day when the road was dry, and the weather was clear. Pruneda, an employee of Defendant SMC Transport, LLC, allegedly "either slowed dramatically or stopped" his tractor-trailer in the right lane of I-59, "creating a road hazard and a danger immediately prior to" the impact. (Am. Compl. 8, ECF No. 5.) Plaintiff Riggio alleges that the trailer Pruneda was hauling "did not have adequate safeguards to prevent vehicle-underrun," and the rear impact guard failed on impact, resulting in Wells' death. (*Id.*) Riggio alleges that Defendant Werner Enterprises, Inc. owned the trailer, but that Werner, SMC Transport, and Pruneda all "exercised control over, outfitted and repaired" the trailer. (*Id.*) Riggio brings claims of negligence against each defendant, seeking compensatory and punitive damages.

Riggio moves for summary judgment as to certain of the defendants' affirmative defenses. The defendants have confessed portions of this motion but oppose it in part. Werner moves for summary judgment on the basis that Riggio has failed to show evidence that 1) the trailer was inadequately maintained, 2) the alleged inadequate maintenance was the proximate cause of the rear impact guard's

failure, or 3) the failure of the rear impact guard was the proximate cause of Mills' death. Pruneda and SMC Transport move for summary judgment on the issues of negligent entrustment, negligent hiring, negligent retention, negligent training, and negligent supervision because SMC has confessed its employer/employee relationship with Pruneda. Additionally, Pruneda and SMC request summary judgment on the issue of punitive damages.

## DISCUSSION

**1. The Legal Standard**

Summary judgment is granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing Fed. R. Civ. P. 56(a)). The burden of production at trial ultimately rests on the nonmovant and the movant must merely show an absence of evidentiary support in the record for the nonmovant's case. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). The nonmoving party must then come forward with specific facts showing that there is a genuine issue for trial. *Id.* The Court must draw justifiable inferences in favor of the nonmovant, provided there is sufficient evidence to draw the inference. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**2. Pruneda and SMC's Motion on Punitive Damages**

Pruneda and SMC move for summary judgment as to Riggio's claim for punitive damages, contending that this simply is not a punitive damages case; the facts support no more than ordinary negligence claims. In response, Riggio argues that by 1) stopping his truck on the interstate, and 2) failing to inspect and repair the trailer, Pruneda was reckless and grossly negligent.

Under Mississippi law, the recovery of punitive damages is disfavored and permitted only in extreme cases. *See Life & Cas. Ins. Co. of Tenn. v. Bristow,* 529 So. 2d 620, 622 (Miss. 1988) (Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and allowed with caution and within narrow limits. "[S]imple negligence is not of itself evidence sufficient to support punitive damages but accompanying facts and circumstances may be used to show that portion of defendant's conduct which constituted proximate cause of the accident was willful and wanton or grossly negligent. *Choctaw Maid Farms, Inc. v. Hailey,* 822 So. 2d 911, 924 (Miss. 2002) (citations omitted).

In regard to his inspection of the trailer, Pruneda testified that he was required to conduct a multipoint inspection before hauling a trailer and each day of hauling the trailer. The inspection included the rear impact guard, to make sure it was "not dented or anything within and has the reflector tapes on it." (Pruneda Dep. 66, ECF No. 179-2.) He would usually use the rear impact guard as a ladder, "so, if it could hold me it's pretty steady on there. . .. So, I make sure it's secured on

there right . . ..." (*Id.* at 67.)  When he inspected the rear impact guard of the trailer he was hauling on the day of the accident, he noticed "mild" rust, but "it wasn't too bad.  It wasn't to the point where it would get out of service." (*Id.* at 122.)  When he stepped on the rear impact guard "it would feel good.  Feel strong." (*Id.* at 123.)

In regard to events leading up to the accident, Pruneda testified that as he approached a weigh station shortly after entering Mississippi, he was speaking to his wife through a Bluetooth headset.  He noticed a couple of cars, an emergency vehicle with flashing lights and people standing at the side of the interstate close to the weigh station entrance.  (Pruneda Dep. 50, 56, ECF No. 179-2.)  He "was under no circumstances going to go into the weight station having that emergency there." (*Id.* at 51.)  He instead disengaged his cruise control by tapping on the brake, let the truck slow by letting off on the gas, and put on his emergency flashers.  (*Id.* at 51, 58.)  Pruneda wanted to move to the left lane to give the emergency vehicles "that right of way, the respect they deserve," but there was swiftly moving traffic preventing him from doing so.  (*Id.*)  When Pruneda put his emergency flashers on he checked his mirrors and noticed a small red SUV behind him also slow down.  (*Id.* at 52.)  He estimated his speed as he passed the weigh station entrance was about thirty to fifty miles per hour.  (*Id.* at 55.)  Pruneda "pressed on the gas pedal as soon as I was about to pass them already, so as soon as I put the – to accelerate, I – that's when I had to [sic] hit." (*Id.* at 52).

The Picayune Police Department traffic officer who was working the first accident at the weigh station entrance – "a simple fender bender" – also testified.

(Wagner Dep. 17, ECF No. 179-3.) When Officer Wagner first arrived, he pulled his police car as far to the right as possible because traffic was so heavy that many drivers in the right lane could not move to the left lane to yield the right of way to his vehicle.[1] (*Id.* at 12.) But drivers were "slowing down as best as they could to yield for my police car." (*Id.*) Officer Wagner's diagram of the scene shows his police car and another vehicle in the triangle created where the weigh station entrance lane leaves the interstate. (*Id.* at 13-14; Def. Mot. Ex. A, at 2, ECF No. 179-1.) He had been there about fifteen minutes when Mills' car hit Pruneda's tractor trailer. (*Id.* at 10.) Officer Wagner was standing on the driver's side of the fender bender vehicle, leaning over the hood and reading off the VIN into his microphone. (*Id.* at 23, 24.) He heard tires squealing and "immediately turned and looked toward the highway thinking I might be struck by a vehicle to try to determine where the sound was coming from. I looked at the highway in enough time to see the car hit the back of the trailer." Officer Wagner was so close to the

---

[1] Mississippi law provides that,
> Upon approaching a stationary authorized emergency vehicle, when such vehicle is giving a signal by use of flashing, blinking, oscillating or rotating lights, as authorized under Section 63-7-19, a person who drives an approaching vehicle shall:
> (a) Proceeding with due caution, yield the right-of-way by making a lane change into a lane not adjacent to that of the authorized emergency vehicle, if possible with due regard to safety and traffic conditions, if on a roadway having at least four (4) lanes with not less than two (2) lanes proceeding in the same direction as the approaching vehicle; or
> (b) Proceeding with due caution, reduce the speed of the vehicle, maintaining a safe speed for road conditions and being prepared to stop, if changing lanes would be impossible or unsafe.

Miss. Code. Ann. § 63-3-809.

accident that glass hit him in the face.  (*Id.* at 23.)  He estimated that Pruneda was traveling at thirty to forty miles per hour, while Mills was traveling "closer to the speed limit, 70."  (*Id.* at 34-35, 45.)

Three of the people involved in the fender bender accident also testified.  Becky Lampp stated that while she and the other people involved in the accident were standing nearby talking, she noticed that

> [a] semi approached right near where we were and came to a complete stop, and I commented to my husband and the man in the pickup truck, "Why is there a semi completely stopped on the interstate?" And I said "He's not even stopped.  He's in park," because his brake lights were off and that just – that's not something you see everyday and I noticed it, because it was very close to where we were.  After I made that comment my husband started to turn around, and the officer as well, and then we watched the Prius hit the semi.

(Becky Lampp Dep. 25, ECF No. 200-5.)  She did not recall hearing any noise, such as tires squealing, prior to the impact.  (*Id.* at 26, 27.)

Thomas Lampp testified that he heard his wife say,

> "Well, why is that 18-wheeler coming to a stop?" and right as I turned the woman had already hit the vehicle, had hit the 18-wheeler, and as I had turned the windows were blowing out she had hit it so hard . . . . The truck was at a dead stop in the right-hand lane.

(Thomas Lampp Dep. 15-16, ECF No. 200-7.)  He did not hear Pruneda's truck go by or "air brakes or anything like that from the 18-wheeler."  (*Id.* at 21.)  He also did not hear any squealing tires or any other sound that indicated braking had occurred prior to the impact.  (*Id.* at 52.)

Caleb Colletti, the driver who rear-ended the Lampp vehicle, described "kind of bumper to bumper" traffic passing by them at somewhere between ten and

twenty miles an hour as Officer Wagner investigated their accident at the side of the interstate. (Colletti Dep. 20, 21, 26-27, ECF No. 200-6.) According to Colletti,

> the traffic was going slowly because of the accident and the cop – and the 18-wheeler that was in the other accident, he was just passing us and I had my – I had my back kind of to the road, and we didn't hear any tires screech or anything. All we heard was the loud bang from her hitting the trailer. And it was kind of – I would say it was probably about 15, 20 feet away from us. It was enough that when she hit I could kind of feel the – you would say the shreds of glass kind of sprayed on us. And when we looked she was planted underneath the trailer.

(*Id.* at 13.) He recalls Becky Lampp's only words being "Oh, God" as the impact occurred. (*Id.* at 37.)

Riggio argues that Pruneda acted recklessly because he was "a) on his cell phone, b) blew past a weigh station entrance, and c) was so distracted he dangerously came to a complete stop on the interstate." (Riggio Resp. Mem. 6, ECF No. 218.) Riggio mischaracterizes the evidence. In the version of events most favorable to Riggio, Pruneda had stopped very close to where the witnesses were standing at the entrance to the weigh station. He could not have "blown by" the entrance. There is also no evidence that Pruneda was distracted. The only evidence regarding Pruneda's attentiveness is his testimony that he was paying close attention to conditions as he approached the accident scene.

Nevertheless, viewing the evidence in the light most favorable to Riggio, the jury could conclude that Pruneda had stopped in the right lane of the interstate under circumstances that made that action negligent. But simple negligence is not of itself evidence sufficient to support punitive damages, unless accompanying facts

and circumstances "show that that portion of defendant's conduct which constituted the proximate cause of the accident was willful and wanton or grossly negligent." *Choctaw Maid Farms, Inc.*, 822 So. 2d at 924 (citation omitted). This rule forecloses Pruneda's alleged failure to inspect the rear impact guard of the trailer as a basis for punitive damages, because that could not have been a proximate cause of the accident. *See id.* (finding that no punitive damage instruction was warranted by evidence of the age and condition of trailer, expired license plate, missing log book, and painted over reflectors, because these factors did not cause or contribute to the accident).

What may be a proximate cause of the accident is Pruneda's alleged act of stopping his truck in an interstate travel lane. The accompanying facts and circumstances in this case are that Pruneda had slowed or stopped as he passed by an emergency vehicle with its lights activated. A Mississippi statute requires all drivers approaching and passing an emergency vehicle with its lights activated to either move to the left lane or slow and be ready to stop. *See* Miss. Code Ann. § 63-3-809(2)(b). Pruneda's testimony that he could not move to the left lane is uncontradicted. Slowing to a stop in the right lane cannot be malicious, reckless, willful and wanton, or grossly negligent when that action is one of the statutorily mandated responses to approaching an emergency vehicle at the side of the highway. The Court may only submit the issue of punitive damages to the jury when it finds, based upon the totality of the circumstances, that the jury could find by clear and convincing evidence that a defendant's conduct reflects either malice or

gross neglect/reckless disregard. *Polk v. Peraza*, No. 1:18CV59-HSO-JCG, 2018 WL 6204451, at *2 (S.D. Miss. Nov. 28, 2018). That standard is not met in this case. The facts are neither "highly unusual" nor is the case "extreme." *Walker v. Target Corp.*, No. 2:16-CV-42-KS-MTP, 2017 WL 2843613, at *2 (S.D. Miss. July 3, 2017) (quoting *Wise v. Valley Bank*, 861 So. 2d 1029, 1035 (Miss. 2003)). *See also Rasdon v. E 3 Trucking, Inc.*, No. 3:19CV100-M-P, 2019 WL 4346576, at *2 (N.D. Miss. Sept. 12, 2019) (citing *Aldridge v. Johnson*, 318 So. 2d 870 at 871-873 (Miss. 1975)) ("If the Mississippi Supreme Court is unwilling to allow a jury to be instructed on punitive damages where the driver caused a wreck by exceeding the speed limit and crossing a double yellow line to travel in the opposite lane in an attempt to pass two vehicles, then the alleged punitive damages claim here, [involving a rear-end collision on the highway], is insufficient.") Pruneda and SMC are entitled to summary judgment on Riggio's claim for punitive damages.

**3. Negligent Entrustment, Hiring, Retention, Training and Supervision**

At the time of the accident, Pruneda was operating his tractor-trailer on behalf of SMC Transport. Consequently, Riggio alleged that SMC was liable for Pruneda's negligence under the doctrine of respondeat superior, and also alleged claims of negligent entrustment, hiring, retention, training and supervision directly against SMC as to Pruneda.[2] (Am. Compl. 14-16, ECF No. 5.) Pruneda and SMC

---

[2] In addition to alleging SMC's negligent entrustment, hiring, retention, training and supervision, Riggio also alleges SMC failed to properly load and distribute the weight of the truck, failed to ensure the rear guard met federal regulations, failed to inspect and maintain the truck, and "otherwise violat[ed] state laws and federal regulations governing trucking companies." (Am. Compl. 15-16, ECF No. 5.)

move for summary judgment on these claims, arguing that they admitted that Pruneda was SMC's employee acting within the course and scope of his employment at the time of the accident. The movants contend that where the master-servant relationship is admitted, issues of negligent entrustment, hiring, retention, training, supervision, and similar claims are rendered legally irrelevant and should be dismissed. The movants cite to a number of cases making this very holding.[3] *See Lee v. Harold David Story, Inc.*, No. 3:09CV696TSL-MTP, 2011 WL 3047500, at *1 & n.1 (S.D. Miss. July 25, 2011) (collecting cases); *Dinger v. Am. Zurich Ins. Co.*, No. 3:13-CV-46-MPM-SAA, 2014 WL 580889, at *2 (N.D. Miss. Feb. 13, 2014) ("[F]ederal courts in Mississippi have regularly held that when an employer admits that they are liable for their employee's actions, the independent negligence claims against the employer should not be an issue at trial.").

Because it is undisputed that Pruneda was acting in the course and scope of his employment at the time of the accident, SMC is liable for any potential negligence on behalf of Pruneda under the theory of respondeat superior. Riggio may not also pursue his direct liability claims against SMC since these are

---

[3] For example, in the *Lee* case, the following claims against a truck driver's employer were dismissed as redundant:
> failing to supervise its employee; negligent retention of the driver; failing to provide driver safety training courses to its employee; failing to instruct its employee on safe driving habits; failing to stress safe driving habits to its employee; encouraging the employee's unsafe driving habits to further its cause; violations of the Mississippi Rules of the Road; and violation of the Federal Motor Carrier Safety Regulations.

*Lee*, 2011 WL 3047500, at *1.

mutually exclusive modes of recovery under Mississippi law.  *See Welch v. Loftus*, 776 F. Supp. 2d 222, 225 (S.D. Miss. 2011) ("Proof of negligent entrustment or the like, then, is unnecessary and duplicitous at best, and at worst could provide unduly prejudicial evidence that is ultimately irrelevant.").

Riggio alternatively argues that the negligent training/retention-type claims should be considered at the punitive damages stage, pointing out that the *Dinger* court declined to dismiss independent claims for punitive damages against a truck driver's employer.  The *Dinger* court held that "[a]ny evidence of [the employer's] gross negligence shall only be admissible after an award of compensatory damages has been made by the jury and the court determines that the issue of punitive damages is to be submitted to the jury."  *Dinger*, 2014 WL 580889, at *3 (citing Miss. Code Ann § 11-1-65).

There is no question that an employer cannot be liable for punitive damages under a theory of respondeat superior.  Miss. Code Ann. § 11-1-65(a)(a).  But "a plaintiff's independent claims for punitive damages against an employer may proceed despite the employer's admission that its employee was acting in the course and scope of employment."  *Roberts v. Ecuanic Exp., Inc.*, No. 2:12-CV-84-KS-MTP, 2012 WL 3052838, at *2 (S.D. Miss. July 25, 2012).  Thus, in the event the jury finds that Pruneda was negligent, SMC could be liable for punitive damages on the independent or direct liability claims.  "If derivative liability is established, 'other avenues – like punitive damages claims – will provide a route for recovery in the event an employer's culpability exceeds that of its employee's imputed negligence.'"

*Dinger*, 2014 WL 580889, at *3 (quoting *Wright v. Watkins & Shepard Trucking, Inc.*, 972 F. Supp. 2d 1218, 1220 (D. Nev. 2013)).

In response, SMC argues that Riggio has made no allegations regarding SMC's actions that rise to the level of gross negligence necessary for consideration of punitive damages. Review of the Amended Complaint shows that Riggio has alleged ordinary negligence against SMC. Riggio alleges that SMC generally did not "act as a reasonably prudent company under the circumstances." (Am. Compl. 15-16, ECF No. 5.) Riggio's allegations do not describe any acts by SMC that could be considered malicious, reckless, or grossly negligent, and he has not explained why punitive damages against SMC might be appropriate. (*See* Riggio Resp. Mem. 11, ECF No. 214.) In view of the evidence produced in this case, and consistent with the punitive damages analysis above, the Court concludes that the jury should not be allowed to consider punitive damages against SMC. For all of these reasons, Pruneda and SMC's Motion for Partial Summary Judgment should be granted.

**4. Werner's Motion for Summary Judgment**

Werner argues that there is no probative evidence from which a jury could find it was negligent or that it should be subject to punitive damages. In order to recover for negligent operation and/or maintenance in Mississippi, Riggio "must establish by a preponderance of the evidence each of the elements of negligence: duty, breach, causation and injury." *Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1, 3 (Miss. 2007); *see also Sellars ex rel. Dill v. Walgreen Co.*, 971 So. 2d 1278, 1279 (Miss. App. 2008) (to overcome summary judgment, Plaintiff must show a

genuine issue regarding each of the four elements of negligence). "It is elementary law that in any lawsuit based upon negligence, it is incumbent upon the plaintiff to first prove by a preponderance of the evidence that the defendant was negligent and that such negligence was a proximate cause of the accident." *Rudd v. Montgomery Elevator Co.*, 618 So. 2d 68, 73 (Miss.1993) (citations omitted). "To make a jury issue on liability in this case, it was incumbent upon [Riggio] to establish by competent evidence that [Werner] was somehow negligent in its maintenance and repair of the [rear impact guard] and that this negligence caused it to malfunction that day." *Id.* at 72.

Riggio argues that the evidence undisputedly shows that Werner inspected the trailer five days before the accident but failed to replace two bolts in the rear impact guard, causing it to fail when Mills rear-ended the trailer. In support, Riggio cites to his expert reports by Householder and Kelly.[4]

Householder concludes that

> the left side of the horizontal bar of the rear impact guard was not properly attached and/or was missing the connecting bolts that secure it to the horizontal bar. This demonstrates defective installation and/or maintenance and caused the excessive underride in this crash. These defects would have been obvious upon visual inspection."

(Riggio Resp. Ex. 11, at 3, ECF No. 207-11.)

---

[4] Householder is a civil engineer providing testimony about the rear impact guard on Pruneda's trailer. Kelly is a "transportation safety expert" providing testimony on Federal Motor Carrier Safety regulations and safety rules as they applied to the defendants. Both Householder and Kelly are subjects of pending *Daubert* challenges. Because the Court assumes for present purposes that these experts will be allowed to testify, resolution of those challenges is not necessary for resolution of Werner's Motion.

- 14 -

Kelly initially adopted Householder's conclusions, (Riggio Resp. Ex. 10, at 16, ECF No. 207-10), but has since retracted his opinion that Werner's maintenance and inspection of the trailer was insufficient. (*See* Kelly Dep. 178, ECF No. 165-14.) Kelly also testified that he did not have an opinion about how long the bolts had been missing, because he couldn't "know what Werner knew when they knew it." (*Id*. at 156, 171.)

There is no evidence supporting Householder's conclusion that the bolts were missing when Werner conducted its inspection. He testified that he "didn't know what opportunities Werner had [to see the missing bolts] one way or the other." (Householder Dep. 46, ECF No. 161-9.) Householder assumed, from examination of post-accident photographs showing no bolts, that Werner had the opportunity to see that the bolts were missing and did not replace them. But Householder testified to possibilities that 1) the bolts were not present at the time of the accident; 2) they were present but failed in tension during the accident; or 3) they were present but removed by first responders. (*Id*. at 68.) He could not say that one possibility was more likely than the others. (*Id*. at 69.)

> Mississippi law requires that when the circumstantial evidence
>
> lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be the equivalent of engaging in pure speculation about the facts . . .. [W]hen the evidence shows that it is just as likely that accident might have occurred from causes other than defendant's negligence, the inference that his negligence was the proximate cause may not be drawn.

*Miss. Valley Gas Co. v. Estate of Walker*, 725 So. 2d 139, 145-46 (Miss. 1998) (citing 57A Am. Jur.2d Negligence § 462 (1989)). Riggio's evidence consists of improper speculation that Werner failed to notice bolts were missing during its inspection of the trailer. *See Rudd*, 618 So. 2d at 73. Therefore, Riggio has failed to show that the evidence of Werner's negligence is sufficient to create a question of fact for the jury.[5] Because the evidence against Werner does not reach the level of ordinary negligence, it cannot support a claim for punitive damages. Werner's Motion will be granted.

### 5. Affirmative Defenses

Riggio's Motion for Summary Judgment argues that the defendants cannot show evidence supporting certain of their affirmative defenses. The defendants

---

[5] Riggio also argues that the "Trailer Interchange Agreement" between Werner and SMC was insufficient, and therefore Werner was negligent by improperly placing the trailer into service with SMC, without which the accident would not have occurred. Werner objects that this claim was not pled in the Amended Complaint and only belatedly brought up by Kelly as a new opinion and is a subject of Werner's [159] Motion to Strike. Regardless of any timeliness issue, "[m]erely arguing that an accident would not have occurred had the vehicle or driver been taken out of service does not satisfy the plaintiff's burden of showing legal cause – even when the alleged violation is directly linked to the actual cause of the accident." *Raglin v. MSJ Trucking, Inc.*, No. 3:12-CV-543-DPJ-FKB, 2013 WL 6631546, at *3 (S.D. Miss. Dec. 17, 2013). *See also Simmons v. Amerada Hess Corp.*, 619 F.2d 440, 442 (5th Cir. 1980) (holding that remote causation cannot constitute proximate cause). There is no link between the alleged deficiencies in the Trailer Interchange Agreement (missing information about the identity of the trailer, compensation, and points of interchange) and the actual cause of the accident. Thus, even if Riggio's Trailer Interchange Agreement argument was timely, it is without merit.

bear the burden of proving their affirmative defenses at trial. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, No. 18-20493, 2019 WL 4410259, at *2 (5th Cir. Sept. 13, 2019). Consequently, the Court views the relevant evidence in the light most favorable to Riggio.

Initially, the Court grants Riggio's Motion to the extent it is uncontested. In regard to Pruneda and SMC, this means dismissal of their affirmative defenses of pre-existing condition, setoff, and failure to mitigate. Pruneda and SMC dispute the viability of their remaining affirmative defenses, at least in part. In regard to Werner, Riggio's Motion is denied as moot in light of the dismissal of Riggio's claims against Werner.

*a. Third-Party Liability*

Pruneda and SMC pled two related third-party liability defenses. Their Seventh Defense is that "Plaintiffs' alleged injuries and damages resulted solely and proximately from conditions and conduct for which Defendants are not liable or responsible." Their Eleventh Defense is that "Plaintiff's alleged injuries were solely and proximately caused by the acts or omissions of persons or entities other than Defendants, for which fault should be apportioned in accordance with Mississippi law."

Riggio argues he is entitled to summary judgment as to these defenses because there is no evidence that Mills' injuries were solely and proximately caused by a third party or by conditions and conduct for which Pruneda and SMC are not responsible. However, the Court concludes there is evidence from which a jury

might find these defenses meritorious, and Defendants should have the opportunity to raise them. Summary judgment will be denied.

    *b. Superseding Cause*

Pruneda and SMC allege that they are not liable for any damages proximately caused by superseding or intervening causes. Riggio argues that the defendants have not identified any other person, entity, or superseding cause responsible for Kim's death. This is also a defense that may properly be raised at trial. Summary Judgment will be denied.

    *c. Catch-All Defense*

Pruneda and SMC argue that although their catch-all defense includes inapplicable defenses, three are valid: assumption of risk, comparative negligence, and contributory negligence. Riggio objects to one: contributory negligence, which he argues is no longer recognized in Mississippi as an absolute bar to recovery. Regardless of whether it can be a complete bar to recovery, contributory negligence is an affirmative defense, and under Mississippi statute the issue is for the jury to determine. Miss. Code Ann. § 11-7-17. Accordingly, the Court grants summary judgment to Riggio in regard to Pruneda and SMC's catch-all defense, except the defenses of assumption of risk, comparative negligence, and contributory negligence.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [165] Motion for Summary Judgment filed by Defendant Werner Enterprises, Inc. is **GRANTED**. Plaintiff's claims against Werner Enterprises, Inc. are **DISMISSED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [177] Motion for Partial Summary Judgment filed by Defendants Israel Pruneda and SMC Transport, LLC is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [179] Motion for Partial Summary Judgment on punitive damages filed by Israel Pruneda and SMC Transport, LLC, is **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that the [184] Motion for Summary Judgment filed by Plaintiff Dustin Riggio is **GRANTED IN PART AND DENIED IN PART,** as set out above.

**SO ORDERED AND ADJUDGED** this the 15th day of November, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE